607 So.2d 1214 (1992)
Charles David SAUNDERS
v.
Jeffy R. ALFORD.
No. 89-CA-185.
Supreme Court of Mississippi.
October 8, 1992.
James H. Mathis, Mathis & Hill, Corinth, for appellant.
Charles M. Merkel, Jr., John H. Cocke, Merkel & Cocke, Clarksdale, for appellee.
En Banc.
BANKS, Justice, for the Court:
We are called upon to abolish the cause of action for criminal conversation. Finding that this cause of action has outlived its usefulness, we declare its demise and reverse and render the judgment entered against the appellant, Charles Saunders in favor of appellee and cross appellant, Jeffy Alford.

I.
Jeffy and Patricia Alford were married on February 17, 1956. Jeffy farmed for a *1215 living while Patricia worked at the Billups Petroleum Company in Leflore County. In December of 1960, Patricia Alford met the vice-president of Billups, Charles Saunders. Saunders was approximately forty years old and wealthy. Alford, according to her own testimony, was twenty-four years old and unhappy. The couple became involved in a sexual relationship, meeting on their lunch breaks and on Saturdays at Saunders' vacant townhouse. Though both were married, Saunders and Alford continued their relationship for more than two decades. During this time, Saunders lavished Patricia with gifts and promises of marriage. He requested that Patricia quit her job. Saunders became very attached to Alford's three daughters requesting that the girls call him Daddy-O.
In February of 1980, Patricia Alford sought a divorce from her husband, Jeffy, alleging that he was an habitual drunk. Ms. Alford testified that Charles Saunders was instrumental in her decision to institute this action. In May of that year, Jeffy and Patricia filed an Amended Bill of Complaint for Divorce seeking to terminate the marriage on grounds of irreconcilable differences. The Alfords were divorced on those grounds on July 31, 1980.
Jeffy Alford instituted this action in the Circuit Court of Leflore County against Charles Saunders, alleging the torts of alienation of affection and criminal conversation. He asserted that Saunders had maintained an illicit affair with his wife for more than twenty-three years. The Complaint sought actual damages of $5,000,000.00 and punitive damages in the same amount.
On June 9, 1988, the case was tried. The jury found for Charles Saunders on the issue of alienation of affection but, on the claim of criminal conversation, found for Jeffy Alford awarding him $7,500.00 in actual damages and $20,000.00 in punitive damages.
This appeal and cross appeal followed, wherein Saunders challenges the underlying causes of action and Alford challenges the trial court's order limiting damages for criminal conversation to the acts occurring within six years of the filing of the suit. Because we dispose of this matter in deciding the former issue, we do not reach the cross appeal.

II.
The torts of alienation of affection and criminal conversation, also known as "heart balm" actions, originated on the common-law belief that wives were the chattel of their spouse. The purpose of a cause of action for alienation of affection is the "protection of the love, society, companionship, and comfort that form the foundation of a marriage... ." Norton v. MacFarlane, 818 P.2d 8, 12 (Utah 1991). See also W. Keeton, Prosser & Keeton on Torts, § 124, at 918 (5th ed. 1984). The right sought to be protected is that of consortium. Note, Criminal Conversation: Civil Action for Adultery, 25 Baylor L.Rev. 495 (1973). It consists in depriving one of the affections of the other. Prosser & Keeton on Torts, at 918.
The elements of a cause of action have been recognized by some courts as: (1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) causal connection between such conduct and loss. See Bearbower v. Merry, 266 N.W.2d 128 (Iowa 1978); Giltner v. Stark, 219 N.W.2d 700 (Iowa 1974); Hunt v. Hunt, 309 N.W.2d 818 (S.D. 1981). The claim for this tort accrues when "the alienation or loss of affection is finally accomplished." Overstreet v. Merlos, 570 So.2d 1196 (Miss. 1990) (citing Dorbrient v. Ciskowski, 54 Wis.2d 419, 195 N.W.2d 449 (1972)). A cause of action for alienation of affection does not require that the defendant committed adultery with the plaintiff's spouse. Camp v. Roberts, 462 So.2d 726 (Miss. 1985).
Twenty states and the District of Columbia have abolished the tort by legislative initiative.[1] Three states have abolished the *1216 tort by judicial decree.[2] By statute, six jurisdictions have limited the cause of action to permit injunctive relief only and have disallowed the award of monetary damages.[3] The courts of Louisiana have never recognized alienation actions. Moulin v. Monteleone, 165 La. 169, 115 So. 447 (1927). We have recently recognized the continued viability of the tort of alienation of affection. Overstreet v. Merlos, 570 So.2d 1196 (Miss. 1990). See also Camp v. Roberts, 462 So.2d 726 (Miss. 1985).
The tort of criminal conversation, on the other hand, is no more or less than an act of adultery between the defendant and the plaintiff's spouse. "The right protected is the exclusive right of one spouse to sexual intercourse with the other." Bearbower v. Merry, 266 N.W.2d 128, 134 (Iowa 1978). At common law, the "husband was regarded as having a property right in the body of his wife and an exclusive right to the personal enjoyment of her. The wife's adultery was therefore considered to be an invasion of the husband's property rights." Kline v. Ansell, 287 Md. 585, 414 A.2d 929, 930 (1980). As noted by one court, "criminal conversation comes closest in form to a strict liability tort." Fadgen v. Lenkner, 469 Pa. 272, 365 A.2d 147, 149 (1976). The cause of action is made out upon the plaintiff's proof that, while married to the plaintiff, the plaintiff's spouse and the defendant engaged in at least one single act of sexual intercourse. Id. The only defenses to these actions appear to be the consent of the plaintiff and the statute of limitations.

III.
Twenty-four states and the District of Columbia have abolished the tort of criminal conversation by legislative enactment.[4] Eight states have abolished the tort by judicial decree.[5]
Several arguments have been advanced for the abolition of it. These include: (1) a woman is no longer the property of her husband; (2) the tort has no deterrent effect; (3) a cause of action may be brought for vindictive purposes; (4) the potential for abuse is great; (5) the tort is devoid of any defenses; and (6) determining damages is difficult. Some of these arguments have been accepted by the courts which abolished criminal conversation by judicial decree.
The most recent court to judicially abolish the tort of criminal conversation is the Utah Supreme Court. In Norton v. MacFarlane, 818 P.2d 8 (Utah 1991), the court found the tort had no useful purpose. The court reasoned that the "tort is not designed to indemnify the aggrieved spouse for any loss to the marriage relationship. Indeed, a damage award may well be a complete windfall to the plaintiff." Id. at 16. The court noted that a cause of action for criminal conversation may be brought because of greed and vindictiveness. The court also found that this cause of action has little relationship to restoration or preservation of the marriage. The Utah court also stated that
the tort may impose large punitive damages on one of two parties to a mutual act, even though the one held liable under the law was not the aggressor and was less culpable. Whether the offending spouse is the initiator, or intercourse occurs because of the mutual desire of both parties, or the offending spouse is wholly passive, the offending spouse always acts consensually. Thus, despite the inevitable contributing fault of the offending spouse, the tort imposes total *1217 liability for the act of two people on only one of them.

Id. at 16.
The court also found that the tort of criminal conversation is unnecessary as long as a cause of action for alienation of affection is available. "To the extent that the tort of criminal conversation provides a cause of action for adultery when the marriage commitment is dead, it serves no useful purpose in awarding damages. If the marriage commitment of the spouses is not dead, the tort of alienation of affections provides an adequate legal remedy." Id. at 17.
In abolishing the tort of criminal conversation, the South Dakota Supreme Court held that heart balm torts are "outmoded archaic holdovers" and "overriding considerations of reality must supersede the perpetuation of alienation or criminal conversation actions." Hunt v. Hunt, 309 N.W.2d 818, 821-22 (S.D. 1981). The court abolished the tort of criminal conversation, but left abolishment of alienation of affections to the state legislature.
The court was concerned that there were no defenses to the tort of criminal conversation.
Consent of the wife is no defense. The fact that the wrongdoer did not know the wife was married but believed her to be single is not a defense. The fact that the wife represented herself as single is not a defense. The fact that the wife was the aggressor is not a defense. The fact that she has been neglected or mistreated by her husband is not a defense. The fact that she and her husband were separated through his fault is no defense.
Id. at 821 (quoting Felsenthal v. McMillan, 493 S.W.2d 729, 731 (Tex. 1973) (Steakley, J., dissenting)). The Hunt court also found the threat of abuse in this type of action to be great. The "potential for abuse ... is clear since `the threat of exposure, publicity, and notoriety is more than sufficient to breed corruption, fraud and, misdealings on the part of unscrupulous persons in bringing unjustified and maliicous [sic] suits.'" Id. at 822 (quoting Note, Criminal Conversation: Civil Action for Adultery, 25 Baylor L.Rev. 495, 499 (1973)).
In Kline v. Ansell, 287 Md. 585, 414 A.2d 929 (1980), the Court of Appeals of Maryland emphasized several problems with the tort of criminal conversation. The court noted that the action is "notorious for affording a fertile field for blackmail and extortion" and action may be brought "not for the purpose of preserving the marital relationship, but rather for purely mercenary or vindictive motives." Id. 414 A.2d at 931. The court also found that this tort is "incompatible with today's sense of fairness" because there are no defenses to a cause of action. Id. Concededly, the court chose to abolish the tort of criminal conversation on state constitutional grounds not applicable here. The court found that only a man could sue or be sued for criminal conversation and this violated that state's equal rights amendment. The law in Maryland "provide[d] different benefits for and imposed different burdens upon citizens based solely upon their sex." Id. at 933. Criminal conversation as applied in Mississippi is available equally to men and women.
In Bearbower v. Merry, 266 N.W.2d 128 (Iowa 1978), the Iowa Supreme Court judicially abolished the tort of criminal conversation because of the lack of defenses to a cause of action. The court, quoting the Pennsylvania Supreme Court, stated that it was "unreasonable to impose upon a defendant such harsh results without affording any real opportunity to interject logically valid defenses... ." Id. at 135 (quoting Fadgen v. Lenkner, 469 Pa. 272, 365 A.2d 147 (1976). The court also found that "a fundamental flaw in the criminal conversation remedy ... is its insensitive imposition without regard to the viability of the marriage relationship, or to the fact ... that relationship may not have been affected adversely. In short, recovery may be it allowed where stability of the marriage survives unimpaired." Id. 266 N.W.2d at 135.
The first court to judicially abolish criminal conversation was the Pennsylvania Supreme Court in 1976 in the case of Fadgen *1218 v. Lenkner, 469 Pa. 272, 365 A.2d 147 (1976). The court found that it was its duty to abolish such actions "where `reason and a right sense of justice recommend it.'" Id. 365 A.2d at 151 (citations omitted). "[W]hen it is determined that a past precedent is no longer in accord with modern realities, and the rationale justifying the old rule no longer finds support, then the pledge to certainty gives way `to new conditions and to the persuasion of superior reasoning.'" Id. at 152 (citation omitted). The court abolished the tort due to the threat of abuse of this action and the lack of defenses available to the defendant.

IV.
It appears that we first recognized the torts of alienation of affection and criminal conversation in the case of Brister v. Dunaway, 149 Miss. 5, 115 So. 36 (1927). In Brister, this Court stated: "To sustain an action for criminal conversation, two things must be established, (1) an actual marriage between the spouses, and (2) sexual intercourse between the defendant and the guilty spouse during the coverture." Id. 115 So. at 38 (quoting 30 C.J. § 1036, p. 1154). The Brister court also noted that separation of the spouses would not serve as a defense to a cause of action for criminal conversation.
In the 1985 decision of Camp v. Roberts, 462 So.2d 726 (Miss. 1985), the plaintiff's claims for alienation of affections and criminal conversation were dismissed in the lower court for lack of in personam jurisdiction. The question on appeal was whether the defendant had committed a viable tort, in whole or in part, under the facts as alleged in the complaint. In answering the question in the affirmative, this Court enumerated that
[b]oth alienation of affection and criminal conversation are recognized as torts in Mississippi. Walter v. Wilson, 228 So.2d 597 (Miss. 1969). That case held that where a husband is wrongfully deprived of his rights to the "services and companionship and consortium of his wife," he has a cause of action "against one who has interfered with his domestic relations." 228 So.2d at 598. The husband might then sue for criminal conversation, which may be proved by showing the defendant committed adultery with the plaintiff's wife; and/or alienation of affection, which does not require proof of adultery. In any event, both causes of action are recognized in Mississippi.
Camp, 462 So.2d at 727. In the recent decision of Overstreet v. Merlos, 570 So.2d 1196, 1198 (Miss. 1990), we refused to reach the issue of abolition of the tort of alienation of affections, because it had not been raised below.

V.
We are not here concerned with the tort of alienation of affections. That cause was decided adversely to the plaintiff and he does not challenge that disposition by cross appeal. Our task is but to consider the extent to which it is advisable to judicially abolish the tort of criminal conversation and whether we have the authority to do so.
The plaintiff argues that it is not within our province to abolish common law torts and that even if it were, public policy considerations dictate a maintenance of this cause of action. Addressing the last first, plaintiff argues essentially that the marriage relationship is worth protecting and that interest is sufficient to maintaining the tort of criminal conversation. Plaintiff clings, however, to a linkage between the tort of criminal conversation and that of alienation of affections. Clearly, he recognizes that it is the latter tort which is better suited as a deterrent protecting the marital relation. In an action for criminal conversation evidence of an effect on the marital relationship is irrelevant.
Plaintiff asserts that abolition of the tort would allow injury to go unredressed. The problem is that he does not identify how he is injured in person, property or reputation. Detached as it is from an actual injury to the marital relation, criminal conversation requires no actual injury at all. It is born of the notion that the cuckold spouse is presumptively injured, or the notion that the spouse has some property interest in *1219 the chastity of the other. Such presumptions and notions have no vitality in today's society.
That our statutes still provide a criminal sanction for adultery gives rise to two of plaintiff's arguments. The first argument is that the tort of criminal conversation as the civil counterpart for conduct deemed criminal is still a valid expression of our public policy. The second argument is that because this tort is implicitly recognized by the legislative enactment of the criminal statute, we are without power to disturb it without finding it unconstitutional. These arguments are unpersuasive.
There is, in fact, no general crime of adultery. Except in the case of pupils and teachers, guardians and wards, and persons forbidden to marry between whom a single act of adultery is prohibited, our state prohibits only unlawful "cohabitation" in "adultery or fornication." Miss. Code Ann. § 97-29-1, -3, -5, -7, -9 (1972). These statutes are codified as "Crimes Against the Public Morals and Decency," Miss. Code Ann., Title 97, Chapter 29, not "Crimes Against the Person," Miss. Code Ann., Title 97, Chapter 3, or "Crimes Against Property," Miss. Code Ann. Title 97, Chapter 17. There is no indication of any intent to give any individual a private cause of action for their breach. Moreover, unlawful cohabitation, unlike criminal conversation, requires a showing of more than a single act of adultery. There must be at least an "habitual concubinage or laying together." Granberry v. State, 61 Miss. 440 (1984); Cutrer v. State, 154 Miss. 80, 121 So. 106 (1929). The existence of criminal sanctions for conduct involving adultery affords plaintiff nothing.
Finally, plaintiff contends that this Court has never abolished a common law tort and lacks the power to do so. He suggests that while it is within the prerogative of this court to abolish immunities, expanding the right of injured parties to seek redress, e.g. Burns v. Burns, 518 So.2d 1205 (Miss. 1988), Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982) we are constitutionally bound to maintain all common law torts until they are abolished by the legislature. He cites our frequent pronouncements to the effect that where no statute governs, the common law prevails. Tuggle v. Williamson, 450 So.2d 93 (Miss. 1984); Munford, Inc. v. Peterson, 368 So.2d 213 (Miss. 1979).
While it is true that in Burns and Pruett we expanded access, the creation of common law is not a one-way street. Indeed, when this court adopted the doctrine of spousal immunity and initiated the doctrine of parental immunity, it contracted the litigative rights of classes of plaintiffs, just as surely as it expanded rights in Burns and Pruett. The common law is not static. What the court gives it can take away. This Court faces no constitutional impediment to ceasing to recognize criminal conversation as a viable tort.

VI.
For the several reasons enumerated above we conclude that the tort of criminal conversation has outlived its usefulness. It follows that we reverse and render on the appeal and render on the cross appeal.
REVERSED AND RENDERED ON DIRECT APPEAL AND RENDERED ON CROSS APPEAL.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, and McRAE, JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion, joined by PITTMAN, J.
ROBERTS, J., not participating according to Supreme Court Internal Rules.
DAN M. LEE, Presiding Judge, dissenting:
I write to respectfully express my disagreement with the decision reached in this case. Contrary to the opinion of the majority, the tort of criminal conversation has justifications stronger than the property rights of one spouse in the body of the other. The foremost is preservation of marital harmony. Furthermore, I see no unfairness in a gender neutral rule that *1220 says in effect, "if you choose to intermeddle in the domestic relationship of another, you are subject to civil suit."
Therefore, I would retain the cause of action recognized by this Court in Brister v. Dunaway, 149 Miss. 5, 115 So. 36 (1927), and re-affirmed in Walter v. Wilson, 228 So.2d 597 (Miss. 1969) and Camp v. Roberts, 462 So.2d 726 (Miss. 1985). The judgment of the lower court should be affirmed.
PITTMAN, J., joins this dissent.
NOTES
[1] Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Indiana, Maine, Maryland, Michigan, Minnesota, Montana, Nevada, Oregon, Texas, Virginia, West Virginia, Wisconsin, and Wyoming.
[2] Idaho, Iowa, and Washington.
[3] Alabama, Florida, New Jersey, New York, Ohio, and Vermont.
[4] Alabama, California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, Minnesota, Montana, Nevada, New Jersey, New York, North Carolina, Ohio, Oregon, Texas, Vermont, Virginia, Wisconsin, and Wyoming.
[5] Iowa, Maryland, New Hampshire, Oklahoma, Pennsylvania, South Dakota, Utah, and Washington.